## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW PAULS,<br>4 Logan Circle, Apt. 3<br>Washington, D.C. 20005,<br><br>               Plaintiff,<br><br>v.<br><br>ALEX TABATABAI,<br>34 Desbrosses Street<br>New York, NY, 10013,<br><br>FERNBANK PARTNERS, LLC,<br>c/o Vincent Poppiti<br>Fox Rothschild LLP<br>919 North Market Street, Suite 300<br>Wilmington DE 19899-2323,<br><br>FERNBANK, LLC,<br>c/o Vincent Poppiti<br>Fox Rothschild LLP<br>919 North Market Street, Suite 300<br>Wilmington DE 19899-2323,<br><br>               Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiff Matthew Pauls, by and through his undersigned counsel, brings this Complaint pursuant to Sections 9 and 10 of the Federal Arbitration Act, 9 U.S.C. §§ 9 and 10, to confirm in part, and vacate in part, the January 28, 2017 arbitration award issued by arbitrator Michael Kelley in an American Arbitration Association arbitration conducted in Washington, D.C.  In support, thereof Mr. Pauls alleges the following:

## JURISDICTION AND VENUE

1.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and Sections 9 and 10 of the Federal Arbitration Act, 9 U.S.C. §§ 9, 10.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.  In particular, Defendants Fernbank Partners and Fernbank are a Washington, DC based hedge fund and the arbitration and arbitration hearings occurred in Washington, D.C.

## PARTIES

3.      Plaintiff Matthew Pauls is the 50 percent owner, founding member and former co-manager of Defendant Fernbank Partners LLC.  He resides in Washington, D.C. at 4 Logan Circle, Apt. 3, Washington, D.C. 20005.

4.      Defendant Alex Tabatabai was Plaintiff's former partner and also a 50 percent owner, founding member and former co-manager of Fernbank Partners LLC.  Upon information and belief he resides at 34 Desbrosses Street, New York, NY, 10013.

5.      Defendant Fernbank Partners LLC is a Delaware limited liability company.  It is currently being managed by a Liquidating Trustee, Vincent Poppiti.  Honorable Vincent J. Poppiti is a retired Delaware family court judge. He is a partner at the law firm Fox Rothschild LLP in their Wilmington, DE office. Upon information and belief, Defendant Poppiti resides in Delaware.

6.      Defendant Fernbank LLC is also a Delaware limited liability company.  It too is being managed by Vincent Poppiti Liquidating Trustee.

## FACTUAL ALLEGATIONS

**A.      Background Concerning Fernbank Partners and The Fund**

7.     Plaintiff and his former partner Tabatabai founded Fernbank Partners in June 2010. They were the sole members and fifty percent co-owners of Fernbank Partners. Fernbank Partners is governed by a limited liability company operating agreement (the "Fernbank Partners' Operating Agreement").

8.     Fernbank Partners is a management company. Its sole business was to manage Fernbank, a private investment fund, also known as a hedge fund. Fernbank raised capital by offering membership interests to qualified investors. Fernbank is also governed by a limited liability company operating agreement (the "Fund Operating Agreement.") The relationship between Fernbank Partners and the Fernbank is governed by an Investment Management Agreement between the two entities (the "IMA").

9.     In exchange for managing the fund, Fernbank agreed to pay to Fernbank Partners a quarterly management fee which was calculated as a small percentage of the assets under management, and an annual incentive allocation which was calculated as a percentage of the fund's profits – if any – for the year. Those fees and allocations were split 50/50 by Mr. Pauls and Mr. Tabatabai.

10.     The investors in the fund were passive investors with no role or say in management.

**B.     Mr. Tabatabai Illegally Removed Mr. Pauls as a Manager of Fernbank Partners**

11.     In October 2014, Mr. Tabatabai was panicking over a large investment Mr. Pauls had made for the fund -- an investment that just weeks later would create millions of dollars in profits for the fund, and would have made tens of millions more if Mr. Tabatabai had not foolishly and illegally shut down the fund.

12.     Around the same time, Mr. Pauls discovered that Mr. Tabatabai had unilaterally, secretly and improperly waived the management fees and incentive allocations owed by the fund's largest investor, Mr. Tabatabai's wife Cindy Kaiser. This waiver cost Fernbank Partners tens of thousands in management fees, and potentially hundreds of thousands in incentive allocations.

13.     To cover-up his own illegal actions, and to continue his improper efforts to waive his wife's fees, Mr. Tabatabai retaliated against Mr. Pauls by creating a lie that Mr. Pauls stole, and had

been stealing for years, hundreds of thousands of dollars from fund investors.  Mr. Tabatabai knew this was not true.

14.     On October 16, 2014, Mr. Tabatabai, in furtherance of his scheme to retaliate against Mr. Pauls, and without Mr. Pauls' knowledge or consent, resolved by himself and on behalf of Fernbank Partners to remove Mr. Pauls as manager, purportedly for "cause," pursuant to the Fernbank Partners' Operating Agreement.  But Mr. Tabatabai had no authority to do that and had no cause to do so.

15.     A few days later, on October 21, 2014, Mr. Tabatabai, also without Mr. Pauls' knowledge or consent, issued a "Special Notice" to Fund investors declaring that he had removed Mr. Pauls "for cause."  The Special Notice also indicated that Mr. Pauls purported removal had triggered Fund members "Special Withdrawal Rights" under the Fund Operating Agreement, forcing the wind down and liquidation of the Fund.

16.     From this point forward, Mr. Pauls was completely locked out of any role in operation or management of the fund, and was provided no information concerning the fund.  Instead, Mr. Tabatabai began the process of winding down the fund and distributing assets to fund investors, making preferential distributions to himself and investors who were his friends and family.  Mr. Tabatabai also set up a new competing fund in which he funneled many of the Fernbank investors.  The fund was run solely by him and he retained all of the profits, profits that should have been shared with Mr. Pauls.

17.     At the same time, Mr. Tabatabai did what he could do destroy Mr. Pauls.  Among other things, he refused to provide him access to find information, refused to make any distributions to Mr. Pauls, and refused to indemnify him or advance him legal fees, all in violation of the relevant operating. He also refused to make distributions, or full distributions, to investors who Mr. Tabatabai perceived as having sided with Mr. Pauls.

18.     In addition, Mr. Tabatabai misused hundreds of thousands of dollars of fund assets to pursue his personal vendetta against Mr. Pauls and begin building a phony case against Mr. Pauls.  In

particular, he used fund assets to pay for a forensic accountant and three separate law firms which all acted at Mr. Tabatabai's sole direction to prosecute claims against Mr. Pauls and investors who were his friends.

19.     Mr. Tabatabai also filed bogus claims against Mr. Pauls with the local police, FBI and securities regulators.  This resulted in a baseless criminal investigation conducted by the Arlington Virginia financial crimes unit against Mr. Pauls.  The investigation lasted over a year, ended up costing the fund hundreds of thousands of dollars, and resulted in no indictment or any criminal charges ever being filed against Mr. Pauls.

**C.     The Arbitration and the Partial Award**

20.     Shortly after removing Mr. Pauls form control of Fernbank Partners, Mr. Tabatabai improperly filed an arbitration against Mr. Pauls with the American Arbitration Association (the "Arbitration").  The Arbitration was initially filed on October 28, 2014 by Fernbank Partners and Alex Tabatabai individually against Mr. Pauls.  Mr. Pauls did not consent to Fernbank Partners' bringing the arbitration.

21.     On March 8, 2015, Mr. Tabatabai amended the demand for arbitration to also include Fernbank as a claimant.  Mr. Pauls did not consent to either Fernbank or Fernbank Partners filing the amended demand for arbitration.  Claimants asserted that Mr. Pauls had stolen hundreds of thousands of dollars of investor funds, the same false claim that Mr. Tabatabai had used to close down the fund and which he asserted in the baseless criminal investigation.

22.     Mr. Pauls denied that he had stolen any investor funds.  Moreover, he asserted that Mr. Tabatabai had illegally removed him from control of Fernbank Partners, and asserted false claims against him the arbitration out of spite and vengeance, and to cover up his own illegal activity.  Mr. Pauls also argued that Fernbank and Fernbank Partners had no authority to bring the arbitration against him without his consent.

23.     Arbitrator Michael Kelley was appointed to the matter.  Mr. Kelley decided that, as a preliminary issue, he first had to decide whether Mr. Tabatabai had authority to remove Mr. Pauls from control of Fernbank Partners, and whether Fernbank and Fernbank Partners could bring claims against Mr. Pauls in the arbitration without Mr. Pauls' consent.

24.     Following extensive briefing and a one day in-person hearing in Washington, DC on July 1, 2015, in which testimony was heard from both Mr. Pauls and Mr. Tabatabai, Arbitrator Kelley issued a Partial Award on July 9, 2015. A copy is attached as Ex. A.  The Partial Award found, in relevant part:

A.      Based on the above findings, the Company LLC Agreement, testimony at the hearing on July 1, 2015 and Delaware Code § 18-110, the attempted effort by Mr. Tabatabai and the Company to remove Mr. Pauls as a Manager of the Company on October 16,2014 is void for lack of the required vote by a majority of the Membership Interests as required by Section 4.10 of the Company LLC Agreement.

B.      Therefore, Mr. Pauls was before, on and after October 16,2014 a Manager of the Company, in addition to his 50% Membership Interest in the Company, and was and is entitled and subject to all the rights, benefits and obligations of a Manager under the Company LLC Agreement both before and after October 16, 2014 through the present.

C.      For clarity, each of Mr. Tabatabai and Mr. Pauls is a Manager and each holds a 50% Membership Interest in the Company. As such, their votes as Managers and Members are required to effect any and all internal Company-related decisions as provided for in Section 4.10 of the Company LLC Agreement. Moreover, any and all decisions relating to the Company's management of other managed entities (including the Fund) shall require the unanimous vote of Mr. Tabatabai and Mr. Pauls as Managers of the Company.

25.     Following the issuance of the Partial Award, Mr. Tabatabai and his attorneys who were acting solely at his direction, did everything in their power to avoid and evade the ruling, including filing several baseless motions.  Mr. Pauls successfully opposed all of these efforts.

26.     By Order dated October 6, 2015, Mr. Kelley awarded to Mr. Pauls his legal fees and expenses incurred in obtaining the Partial Award and defending against the baseless motions brought by Mr. Tabatabai.  Those amounts were ordered to be paid by Mr. Tabatabai.

27.     After Mr. Pauls counsel submitted their invoices to Mr. Kelley *in camera* for his review, by Order dated, January 15, 2016, Mr. Kelley ordered:

Claimant Alex Tabatabai shall pay to Mr. Pauls' the total amount of $271,875.00, which amount shall be paid by Mr. Tabatabai to Mr. Pauls no later than February 15,2016. Upon receipt of such amount, Mr. Pauls shall promptly pay (within one (1) business day) to Mr. Steven Barentzen, Esq. the amount of$130,850.00 and to Mr. James Wines, Esq. the amount of $141,125.00. Mr. Pauls shall confirm in writing receipt of payment from Mr. Tabatabai and each of Messrs. Barentzen and Wines shall confirm in writing receipt of payment from Mr. Pauls.

A copy of that Order is attached as Exhibit B.

28.    Mr. Tabatabai never paid those amounts which still remain due and owing plus interest.

**D.    The Appointment of the Liquidating Trustee and the Partial Award**

29.    In the Partial Award, in addition to finding that Mr. Tabatabai had illegally removed Mr. Pauls from control of Fernbank Partners, Arbitrator Kelley also determined under Delaware Code § 18-802 that is was not reasonably practicable for Mr. Pauls and Mr. Tabatabai to continue to carry on the business of Fernbank Partners in conformity with the Fernbank Partners' Operating Agreement and that, therefore, unless the parties could agree otherwise, he would appoint a liquidating trustee to wind down Fernbank Partners' affairs.

30.    Because of Mr. Tabatabai's bad faith refusal to even attempt to amicably resolve the matter, Mr. Pauls and Mr. Tabatabai were unable to agree to wind down the fund by themselves or agree on a Liquidating Trustee to do so.  Thus, pursuant to an email Order dated August 6, 2015, Arbitrator Kelley, appointed Honorable Vincent J. Poppiti to act as liquidating trustee for Fernbank Partners.

31.    Vincent Poppiti is a retired Delaware family law court judge. He is a partner in the Delaware office of the law firm Fox Rothschild LLP. He has no professional experience in hedge fund law or accounting or any professional experience in matters involving the duties or responsibilities owed by investment managers to the private funds for which they perform services. Nor does Poppiti have any experience liquidating or otherwise managing or dissolving an investment management company or a private fund. He also does not have any professional experience in auditing or accounting practices or securities regulation.

32.     Pursuant to a letter dated August 7, 2015, Defendant Poppiti accepted appointment as liquidating trustee for Fernbank Partners.

33.     In that same letter, Defendant Poppiti *designated himself* to act as liquidating trustee for the Fund.

34.     Rather than act in accordance with his fiduciary duties to Fernbank Partners, the LT naively believed the false allegations of Mr. Tabatabai, and like Mr. Tabatabai before him, treated Mr. Pauls and unfairly, and locked him out of the liquidation process.

35.     Instead of doing the job for which he was appointed and simply figuring out how much money was owed to Fernbank Partners and each investor, and distributing those amounts, the LT instead undertook what he initially claimed was an "audit" of the fund.  The Liquidating Trustee initially estimated that the audit would be complete in November 2015.  As it turns out, what was conducted was not an audit at all, but rather an expert report prepared by the Liquidating Trustee's expert in which the Trustee set out, ultimately unsuccessfully, to prove the false accusations that Mr. Tabatabai has asserted against Mr. Pauls.

36.     This expert report was not completed until June, 2016, nearly seven months late, and when it was done failed to completely exonerated Mr. Pauls.  The report contained no evidence that Mr. Pauls had stolen any fund assets or taken any actions that that harmed the fund at all.

37.     During the nearly year-long period that Mr. Pauls was waiting for the purported audit to be completed, Mr. Pauls requested from the Liquidating Trustee: (i) partial payment of the incentive allocation due from the Fund to Fernbank Partners, and then to Mr. Pauls and (ii) indemnification of the significant legal fees and expenses incurred by Mr. Pauls to date in the Arbitration – i.e. the legal fees that Mr. Pauls had expended successfully proving that his removal had been improper and petitioning the appointment of a liquidating trustee for Fernbank Partners, and (iii) advancement of his legal fees and expenses going forward to which he was clearly entitled under the fund's operating agreements.

38.     The Liquidating Trustee illegally and inexplicably denied Mr. Pauls' request in violation of his fiduciary duties to Fernbank Partners and Mr. Pauls and in violation of the relevant operating agreements and the IMA.

39.     As a result, Mr. Pauls filed a motion with Arbitrator Kelley seeking an interim award of the relief sought above.  Arbitrator Kelley incorrectly denied Mr. Pauls' request for payment of incentive fees due to Mr. Pauls and his request for indemnification and advancement without prejudice. Mr. Pauls raised the issue of the advancement of his fees and expenses numerous other times during the course of the arbitration, both by formal motion and more informally during status calls and hearings. Each time Arbitrator Kelley improperly denied Mr. Pauls' requests without prejudice.

40.     These rulings, denying Mr. Pauls the hundreds of thousands in fees owed to him and denying his advancement of his legal fees and expenses, essentially made it impossible for Mr. Pauls to defend himself in the arbitration or pursue claims in the arbitration.  Mr. Pauls is and was destitute, as the management fees and incentive allocations owed by the Fund were Mr. Pauls' only source of income.  While the Mr. Tabatabai and the Trustee spent by Mr. Pauls estimation, two million in legal and expert fees prosecuting their baseless claims against Mr. Pauls, Mr. Pauls was improperly denied advancement of his legal expenses and payment of the fees owed to him and thus could not afford his own expert to rebut the LT's report.  Moreover, he was unable to fully engage in discovery and was unable to take a single deposition because he could not afford the court reporter's fees.

41.     The Liquidating Trustee finally completed and provided to the parties his expert's report in June 2016.  That report established that not only had Mr. Pauls not stolen fund assets as he had been falsely accused of doing by Mr. Tabatabai and the Liquidating Trustee, but that Mr. Pauls was owed nearly $200,000, and figure that significantly understated the amounts actually owed to Mr. Pauls for reasons acknowledged and admitted by the LT's expert.

42.     The expert report failed to find a single action taken by Mr. Pauls that in any way injured or harmed the fund or the fund's investors.

43.     In contrast to the multi-million-dollar witch hunt he performed against Mr. Pauls, neither the LT nor his expert failed to take any actions looking into the illegal and improper activities of Mr. Tabatabai or the lawyers and professionals he illegally hired and paid with fund assets, or the hundreds of thousands of dollars in losses incurred by Mr. Tabatabai after he illegally through Mr. Pauls out of Fernbank Partners.

44.     Despite this report validating Mr. Pauls, the Liquidating Trustee, in violation of his fiduciary duties, rather pursue claims on behalf of Fernbank Partners and Mr. Pauls, completely abdicated those fiduciary duties and instead inexplicably pursued claims against Mr. Pauls and Fernbank Partners.

45.     Because the report proved that Mr. Pauls did not steal any funds, the Liquidating Trustee had to change completely the claims in the arbitration.  Instead of pursuing Mr. Pauls for stealing, at the last minute the LT now asserted that Mr. Pauls failed to maintain adequate books and records, despite never having even looked at the records that Mr. Pauls maintained or having ever spoken with Mr. Pauls about those records.

46.     There were numerous material issues that occurred during the course of the hearing that were grossly unfair to Mr. Pauls and greatly prejudiced Mr. Pauls' ability to fairly conduct and participate in the hearing, including but not limited to: (1) the hearing was only scheduled for only three days over Mr. Pauls' objection and this provided Mr. Pauls insufficient time to present evidence in support of his claims and defenses, and the was only provided 6 and half hours, to present his opening statement, cross examine witnesses present his own evidence and testimony; (2) the Liquidating Trustee was improperly permitted to present testimony from two undisclosed witnesses not on his witness list; (3) the Liquidating Trustee was permitted to present testimony from an improperly and belatedly

disclosed expert who only produced his records and documentary evidence concerning his testimony days before the hearing; and (4) Mr. Tabatabai and the Liquidating Trustee were able to rely on documents, and testimony relevant to those documents, that were produced well after the discovery deadline, including but not limited to documents concerning expert testimony.

47.     On January 28, 2017, Mr. Kelley issued the final award. A copy is attached hereto as Exhibit C.

## CAUSES OF ACTION

### First Cause of Action

### Confirming the Partial Award and a Portion of the Final Arbitration Award

48.     The allegations in paragraphs 1 through 48 are realleged and incorporated herein.

49.     Pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, Mr. Pauls moves to confirm that portion of the Partial Award finding that Mr. Pauls was improperly removed from control of Fernbank Partners (Ex. A), the January 15, 2016 Order awarding fees to Mr. Pauls against Mr. Tabatabai (Ex. B) and Part A of the Arbitrator's ruling in the Final Award (Ex. C) confirming the January 15, 2016 Order and awarding Mr. Pauls damages against Mr. Tabatabai:

> A.     The Prior Determinations are hereby affirmed and made a part of this Final Award. Regarding the Arbitrator's determination as to legal fees and expenses set forth in his Determination dated January 15, 2016 (Exhibit B), the $271,975.00 plus six percent (6%) annual interest thereon accruing from February 15, 2016 until paid shall be paid by Mr. Tabatabai to Mr. Pauls no later than thirty (30) days from the date of this Final Award. Mr. Pauls shall then have five (5) business days to pay (i) to Mr. Barentzen the amount of $130,850.00 plus six percent (6%) annual interest thereon and (ii) to Mr. Wines the amount of $141,125.00 plus six percent (60/0) annual interest thereon.

### Second Cause of Action

### Vacating a Portion of the Arbitration Award

50.     The allegations in paragraphs 1 through 49 are realleged and incorporated herein.

51.     Mr. Pauls moves to vacate all other orders, rulings, and findings in this arbitration, including but not limited to the portions of the Final Award other than Ruling A noted above.

52.     Pursuant to 9. U.S.C. § 10(a)(3), one ground for vacating an arbitration award is:

> Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

Instances of that occurring in this arbitration include:

(i)     The arbitrators' failure to allow more than three days for the hearing;

(ii)    The arbitrator's' failure to provide Mr. Pauls sufficient and adequate time to present evidence in support of his claims and defenses;

(iii)   The arbitrator's failure to require Mr. Tabatabai and the Liquidating Trustee to provide Mr. Pauls access to "privilege documents" and other documents relevant to the case including Mr. Tabatabai's e-mails and documents related to his hedge fund Arosa;

(iv)    The arbitrator's failure to adequately sanction Mr. Tabatabai and the Liquidating Trustee for failing to produce, or failing to timely produce, documents;

(v)     The arbitrator's failure to require the Liquidating Trustee to produce unredacted invoices or in any way monitor the Liquidating Trustee's fees or payments to himself;

(vi)    The arbitrator improperly permitting the Liquidating Trustee to call undisclosed witnesses at the hearing not identified on its witness list;

(vii)   The arbitrator improperly permitting the Liquidating Trustee to call at the hearing to testify an "expert" that was not properly disclosed, and failed to timely provide a report or timely produce documents and records relevant to his testimony;

(viii)  The arbitrator improperly permitting the Liquidating Trustee to call at the hearing to testify an "expert" who failed to timely produce his work papers which formed the basis of his "expert" opinion; and

(ix)    The arbitrator improperly permitted the Liquidating Trustee to submit and rely on evidence that was produced after discovery deadline.

53.     Pursuant to 9. U.S.C. § 10(a)(4), one ground for vacating an arbitration award is "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

Instances that occurring in this arbitration include:

(i)     The arbitrator's improper ruling that the Fund was not required to indemnify Mr. Pauls or advance Mr. Pauls his attorney's fees and expenses which made properly preparing his defense and claims an impossibility;

(ii)    The arbitrator's improper ruling that Mr. Pauls was not entitled to interim award of management and incentive fees, despite that Mr. Tabatabai made such an award to himself and has refused to return that distribution;

(iii)   The arbitrator's failure to indemnify Mr. Tabatabai for the fees incurred pursuant to the Partial Award and the January 15, 2016 Order and approve payment of fees to Mr. Pauls even though such relief was requested by all parties including the Liquidating Trustee;

(iv)    The arbitrator improperly found that Mr. Pauls had "forfeited" his contractual right to hundreds of thousands of management and incentive allocation even though there is no legal or contractual basis to support that finding and none was presented at any point during the arbitration;

(v)     The arbitrator improperly finding that Mr. Pauls had forfeited management and incentive fees even though no evidence was presented that Mr. Pauls took any actions that harmed or injured the fund or investors;

(vi)    The arbitrator correctly found that Mr. Tabatabai had materially breached his contract with respect to Mr. Pauls, but failed to award Mr. Pauls any damages against Mr. Tabatabai;

(vii)   The arbitrator failed to award any damages to Mr. Pauls against Mr. Tabatabai for any of the claims that Mr. Pauls asserted and proved against Mr. Tabatabai, including: (1) Breach of Fiduciary Duty and Duty of Loyalty; (2) Conversion; (3) Breach of Contract; (4) Breach of the Duty of Good Faith and Fair Dealing; (5) Defamation; (6) False Light; (7) Prima Facie Tort; (8) Tortious Interference with Contractual Relations; (9) Interference with Prospective Contractual Relations; (10) Intentional Infliction of Emotional Distress; (11) Abuse of Process; (12) Malicious Prosecution and (13) Unjust Enrichment.

(viii)  The arbitrator improperly found that the books and records maintained by Mr. Pauls were inadequate even though there was no evidence to support that finding, the LT had not even reviewed Mr. Pauls books and records nor spoken with him about them, and there was no evidence that the books and records maintained by Mr. Pauls injured or harmed investors or the fund;

(ix)    The arbitrator properly found that Mr. Tabatabai was not entitled to indemnification, but the Order was failed to require Mr. Tabatabai or his attorneys to pay back any fund assets improperly paid to them for activities or services provided by them during the period after Mr. Pauls was improperly removed from control of the Fund;

(x)     The arbitrator failed to make any inquiry into the reasonableness of Liquidating Trustee's fees or otherwise properly monitor and control the LT's actions with respect to the liquidation of Fernbank;

(xi)    The arbitrator failed to properly calculate and assess the management fees and incentive allocations due and owing to Mr. Pauls, including but not limited to improperly calculating the funds' profits and improperly allocating legal fees and expenses incurred by Mr. Tabatabai against Mr. Pauls;

(xii)   failing to sanction Mr. Tabatabai, or awarding any fees or damages to Mr. Pauls, for Mr. Tabatabai submitting forged evidence and violating the confidentiality of the arbitration proceeding;

(xiii)  failing to award fees or damages to Mr. Pauls for establishing that the Liquidating Trustee had illegally improperly used fund assets to pay fees to Mr. Tabatabai's attorney Mr. Bartell and for establishing that Mr. Tabatabai had improperly made preferential distributions to himself;

(xiv)   The arbitrator failed to supervise or monitor the activities of the Liquidating Trustee and failed to require the Liquidating Trustee to fulfill his fiduciary duties to Mr. Pauls and Fernbank Partners;

54.     Mr. Pauls reserves his right to modify, amend or supplement these grounds to vacate prior to a hearing or a trial on this matter.

WHEREFORE, Plaintiff Matthew Pauls respectfully demands the following:

1.      An Order confirming a portion of the Partial Award, the January 15, 2016 Ruling, and Ruling A of the Final Award;

2.      An Order vacating all of other orders, rulings and findings in the arbitration and the remainder of the Final Award;

3.      An award to Mr. Pauls of costs and fees;

Dated:  March 21, 2017

Respectfully submitted,

Steven Barentzen
Law Office of Steven Barentzen
910 17th Street, NW, Suite 800
Washington, DC 20006

(202) 289-4333
(202) 888-6268 fax
Steven@Barentzenlaw.com

James Wines
LAW OFFICE OF JAMES M WINES
1802 Stirrup Lane
Alexandria, VA 22308
202.297.6768
winesj@wineslegal.com

*Counsel for Plaintiff Matthew Pauls*

# EXHIBIT A



EXHIBIT

A

AMERICAN ARBITRATION ASSOCIATION

---

FERNBANK LLC,
FERNBANK PARTNERS LLC,
ALEX TABATABAI,

  Claimants,

    v.        Case No.: 01-14-00001-7921

MATTHEW PAULS,

  Respondent.

---

## PARTIAL AWARD

  **I, THE UNDERSIGNED ARBITRATOR,** having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated May 13, 2012, and been having duly sworn, and having duly heard the proofs and allegations of the parties, do hereby, **PARTIALLY AWARD** as follows:

### Introduction

  On July 1, 2015, an evidentiary hearing was held on the limited issue of whether Claimants Fernbank Partners LLC (the "Company") and Mr. Alex Tabatabai ("Mr. Tabatabai") had the authority under the Company's Second Amended & Restated Delaware Limited Liability Company Agreement, dated May 13, 2012, to remove Respondent, Mr. Matthew Pauls ("Mr. Pauls") as a Manager of the Company. This evidentiary hearing specifically did not address any claims involving improprieties as alleged by Claimants against Mr. Pauls, which claims and any counter-claims and / or cross claims will be addressed at one or more subsequent evidentiary hearings. Attending the hearing in person were Mr. Tabatabai, represented by Mr. Jeremy Bartell, Esq., the Company, represented by Mr. Jeffrey Cohen, Esq., Fernbank LLC (the "Fund"), represented by Mr. Douglas MacLean, Esq. and Mr. Pauls, represented by Messrs. James Wines, Esq. and Steven Barentzen, Esq. Mr. Kelley presided as sole arbitrator. A court reporter was not present, but each of Claimants and Respondent was permitted to audiotape the proceeding.

### Pleadings to Date

  As of the date of the July 1, 2015 hearing, the Arbitrator had before him the following relevant pleadings:

  a.  Claimants' Amended Demand for Arbitration, dated March 8, 2015;

b.     Respondent's Answer dated May 22, 2015 (note:  Respondent's pleading was denominated as an Answer and Counterclaim, but the Counterclaim portion has not yet been accepted by the American Arbitration Association pending payment of fees or a hardship determination related thereto);

c.     Plaintiffs' [Claimants'] Brief Explaining the Authority of Alex Tabatabai to Act on Behalf of the Fernbank Plaintiffs [Claimants] Pursuant to Agreements and Applicable Law, dated May 29, 2015; and

d.     Respondent's Memorandum Demonstrating His Continued Authority and Control as Member-Manager of Fernbank Partners, dated May 29, 2015.

Other Relevant Documents

In addition to the above pleadings and oral testimony under oath at the hearing, the Arbitrator has also considered the following documents:

i.  Fernbank Partners LLC Second Amended & Restated Delaware Limited Liability Company Operating Agreement, dated May 13, 2012 and executed by each of Mr. Tabatabai and Mr. Pauls (the "Company LLC Agreement"); and

ii.  Fernbank LLC Limited Liability Company Operating Agreement, revised July 1, 2013 and executed by Fernbank Partners LLC and each investor in the Fund (the "Fund LLC Agreement).

Jurisdiction

The Arbitrator's jurisdiction over the claims and parties is contained in Section 11 of the Company's LLC Agreement as follows:

"Any controversy, claim or dispute arising out of or relating to this Agreement, shall be settled by binding arbitration in Arlington, VA.  Such arbitration shall be conducted in accordance with the then prevailing commercial arbitration rules of the American Arbitration Association ("AAA"), with the following exceptions if in conflict: (a) one arbitrator shall be chosen by AAA (the "Arbitrator"; (b) each party to the arbitration will pay its pro rata share of the expenses and fees of the arbitrator, together with other expenses of the arbitration incurred or approved by the Arbitrator; and (c) arbitration may proceed in the absence of any party if written notice (pursuant to the Arbitrator's rules and regulations) of the proceedings has been given to such party.  The parties agree to abide by all decisions and awards rendered in such proceedings.  Such decisions and awards rendered by the arbitrator shall be final and conclusive and may be entered in any court having jurisdiction thereof as a basis of judgment and of the issuance of execution for its collection. All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity, provided however, that nothing in this subsection shall be construed a precluding brin[g]ing an action for injunctive relief or other equitable

relief.  The Arbitrator shall not have the right to award punitive damages or speculative damages to either party and shall not have the power to amend this Agreement."

Each of Mr. Tabatabai and Mr. Pauls executed the Company's LLC Agreement.  None of the parties has objected to Fernbank LLC as a party to this arbitration, and Fernbank LLC has joined in this arbitration as a Claimant and participated in the July 1, 2015 hearing through its separate counsel, Mr. Douglas MacLean, Esq.

<u>Governing Law</u>

The Company LLC Agreement provides in Section 12.2 that

> "This Agreement and the obligations of the Members hereunder shall be construed and enforced in accordance with the laws of the State of Delaware, excluding any conflicts of law rule or principle which might refer such construction to the laws of another state or country."

Each of the Company and the Fund are Delaware limited liability companies.

<u>Key Findings</u>

1.      The Company LLC Agreement and testimony at the hearing demonstrate that it was Mr. Tabatabai's and Mr. Pauls' intention to co-manage the Company and that their unanimous agreement is required to "manage, conduct and operate the Company's business including enter into contracts or obligations; assign intellectual property of the Company; provide for an annual salary; admit additional members; or approve Transfers of a Membership Interest." (Company LLC Agreement, Section 3.1(a)).

2.      The Company LLC Agreement also provides as follows: "Under no condition shall a Manager be removed from their role as a Manager without their consent except if such Manager is being removed for "cause" or as a result of such Manager's death, incapacity, or legally determined incompetence . . . The Managers shall be Matt Pauls and Alex Tabatabai." (Company LLC Agreement, Section 3.1(a)).

3.      Section 3.1(a) of the Company LLC Agreement is silent as to the mechanism and voting requirements necessary for terminating a Manager for "cause."

4.      However, Section 4.10 provides that "[v]oting for all internal Company [Fernbank Partners LLC] related decisions shall require a majority of the Membership Interest and unanimous Man[a]ger approval."

5.      In the absence of a separate voting mechanism in Section 3.1(a) for removal for "cause," Section 4.10 controls the voting procedure for a decision to remove one of the two Managers for "cause".

6.     As of October 16, 2014 (the date Mr. Tabatabai attempted to remove Mr. Pauls for "cause" under the Company LLC Agreement) through the present time, it is undisputed from the testimony at the hearing that each of Mr. Pauls and Mr. Tabatabai held and currently holds fifty percent (50%) of the Membership Interests in the Company. Therefore, neither Mr. Pauls nor Mr. Tabatabai, acting alone, had as of October 16, 2014 or has presently a majority of the Membership Interests required to approve the internal company-related decision to terminate one of its two Managers. Therefore, Mr. Tabatabai did not have the required majority Membership Interest approval required to remove Mr. Pauls for "cause" on October 16, 2014 (given the inability to obtain the required majority Membership Interest for removing a Manager required under Section 4.10, I do not need to separately consider whether Mr. Paul's vote as a Manager was also needed under Section 4.10).

7.     At all times relevant hereto, Fernbank Partners LLC has been and is the Manager for the Fund [Fernbank LLC]: "The management of the Company [Fernbank LLC] shall be vested exclusively with the Manager." (Fund LLC Agreement, Section 2.01.) Moreover, Fernbank Partners LLC receives a quarterly "management fee" equal to 0.375% (1.5% annualized) calculated on the each Member's beginning capital account for each fiscal quarter." (Fund LLC Agreement, Section 2.07.)

8.     In light of the provisions of the Company LLC Agreement and the fact that neither Mr. Pauls nor Mr. Tabatabai holds a majority of the Membership Interests, and given the inability of Mr. Pauls and Mr. Tabatabai to reach agreement as Managers and Members, it is not reasonably practicable to carry on the business of the Company in conformity with a limited liability company. Moreover, it is not practical for the Company to continue to manage the Fund in accordance the terms of the Fund LLC Agreement.

## AWARD

A.     Based on the above findings, the Company LLC Agreement, testimony at the hearing on July 1, 2015 and Delaware Code § 18-110, the attempted effort by Mr. Tabatabai and the Company to remove Mr. Pauls as a Manager of the Company on October 16, 2014 is void for lack of the required vote by a majority of the Membership Interests as required by Section 4.10 of the Company LLC Agreement.

B.     Therefore, Mr. Pauls was before, on and after October 16, 2014 a Manager of the Company, in addition to his 50% Membership Interest in the Company, and was and is entitled and subject to all the rights, benefits and obligations of a Manager under the Company LLC Agreement both before and after October 16, 2014 through the present.

C.     For clarity, each of Mr. Tabatabai and Mr. Pauls is a Manager and each holds a 50% Membership Interest in the Company. As such, their votes as Managers and Members are required to effect any and all internal Company-related decisions as provided for in Section 4.10 of the Company LLC Agreement. Moreover, any and all decisions relating to the Company's management of other managed entities (including the Fund) shall require the unanimous vote of Mr. Tabatabai and Mr. Pauls as Managers of the Company.

D.      Pursuant to Delaware Code § 18-802, it is not reasonably practicable to carry on the business of the Company in conformity with a limited liability company and, therefore, the Company shall be dissolved effective Thursday, July 16, 2015 unless, prior to such date, Claimants and Respondent agree in writing (and so jointly inform the Arbitrator) that such dissolution is not in the best interest of the Company's members or the Fund and its members (a "Non-Dissolution Agreement").

E.      In the event of dissolution on July 16, 2015, pursuant to Delaware Code § 18-803, the Company's affairs shall be promptly wound up and a liquidating trustee shall be appointed for this purpose.  Claimants and Respondents shall have until close of business on Monday, July 20, 2015 to jointly agree and to appoint such liquidating trustee.  In the absence of such mutually agreed appointment, the Arbitrator shall select a liquidating trustee for the Company.  The liquidating trustee shall distribute the Company's assets in accordance with Delaware Code § 18-804.

F.  Absent good cause shown, from the date hereof through the earlier of the date that (i) a Non-Dissolution Agreement is reached and (ii) a liquidating trustee is appointed pursuant to item E above, (x) neither Mr. Tabatabai nor Mr. Pauls, nor any third party shall remove or otherwise distribute or expend any assets of the Company or the Fund and (y) all bank accounts held in the name of the Company and the Fund shall be frozen.

G.      The liquidating trustee shall wind up the affairs of the Company in accordance with Delaware law.  Once appointed, the liquidating trustee shall be entitled to, on behalf of the Company, (a) pay all obligations to third parties including, but not limited to, the fund administrator and tax obligations, (b) pay each of Mr. Tabatabai and Mr. Pauls their respective salaries on a going-forward basis from the date of the appointment of the liquidating trustee at the frequency and amounts each was receiving as of June 30, 2014, (c) pay all the costs and fees associated with this arbitration unless and until the Arbitrator allocates such fees and expenses to one or more of the parties in any final award  in accordance with Section 11 of the Company LLC Agreement and / or the AAA's Commercial Arbitration Rules and (d) create reserves for liabilities.  In the event of a Non-Dissolution Agreement, the payments and reserves provided for in this item G shall be made jointly by Mr. Tabatabai and Mr. Pauls and all Company and Fund bank accounts shall be amended to reflect such required joint authority.

H.      The liquidating trustee as provided for in item E above shall advise the Arbitrator within 30 days of his, her or its appointment as to the appropriateness of and timing for dissolving the Fund, taking into primary consideration maximizing the value of the Fund's assets for the benefit of the Fund's members (investors).

I.      The Arbitrator shall retain jurisdiction over the following matters:

i.      A Non-Dissolution Agreement;

ii.     Any and all disputes arising out of or relating to the (A) appointment of the liquidating trustee and / or (B) affairs of the Company and the Fund from the date hereof through the date of the appointment of the liquidating trustee;

iii.    Any and all claims by the Claimants against Respondent and, if applicable any counter-claims by Respondent against any or all Claimant(s) and any cross-claims between any of the Claimants. Such claims, as applicable, will be the subject of one or more evidentiary hearings to be scheduled by the Arbitrator.

iv.     Allocation of fees and expenses to, among or between the parties to this arbitration in any final award in accordance with Section 11 of the Company's LLC Agreement and / or the AAA's Commercial Arbitration Rules.

It is so **PARTIALLY AWARDED** this 9th day of July, 2015

Michael P. Kelley, Arbitrator

District of Columbia

        SS:

City of Washington

I, Michael P. Kelley, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Partial Award.

Date  July 9, 2015          Michael P. Kelley, Arbitrator

{34350875;1}6

# EXHIBIT B



INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®



AMERICAN ARBITRATION ASSOCIATION
Commercial Arbitration Tribunal

In the Matter of the Arbitration between:

Case Number: 01-14-0001-7921

    Fernbank Partners LLC
    Fernbank LLC
    Alex Tabatabai

-and-

Matthew Christian Pauls

### DETERMINATION OF LEGAL FEES AND EXPENSES PURSUANT TO ITEM 1 OF ARBITRATOR'S DISPOSITION OF RESPONDENT MATTHEW PAULS' REQUESTS FOR INTERIM RELIEF DATED OCTOBER 6, 2015 ("OCTOBER 6, 2015 DISPOSITION") AND DISPOSITION OF RESPONDENT MATTHEW PAULS' RENEWED MOTION FOR ADVANCEMENT OF LEGAL FEES AND EXPENSES FOR THIS ARBITRATION

    I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated May 12, 2012, and Claimant Fernbank LLC, having submitted itself to this Arbitration through the Amended Demand for Arbitration dated March 8, 2015, and the Arbitrator, having been duly sworn, and having duly considered (a) the reasonable and documented legal fees and expenses incurred by Respondent Matthew Pauls ("Mr. Pauls") through and relating to the Partial Award in this Arbitration (Item 1 of the October 6, 2015 Disposition), (b) Mr. Pauls' renewed Request for Interim Relief for the Advancement of Legal Fees and Expenses for this Arbitration dated December 28, 2015 (the "Renewed Request"), (c) the Liquidating Trustee's Response on behalf of Fernbank Partners LLC and Fernbank LLC dated January 7, 2016 to the Renewed Request, (d) Claimant Alex Tabatabai's Response dated January 7, 2016 to the Renewed Request and (e) Mr. Pauls' Reply dated January 12, 2016 to the Liquidating Trustee's and Mr. Tabatabai's Responses, does hereby:

    1.    DETERMINE that pursuant to Item 1 of the Arbitrator's October 6, 2015 Disposition, Claimant Alex Tabatabai shall pay to Mr. Pauls' the total amount of $271,875.00, which amount shall be paid by Mr. Tabatabai to Mr. Pauls no later than February 15, 2016. Upon receipt of such amount, Mr. Pauls shall promptly pay (within one (1) business day) to Mr. Steven Barentzen, Esq. the amount of $130,850.00 and to Mr. James Wines, Esq. the amount of $141,125.00. Mr. Pauls shall confirm in writing receipt of payment from Mr. Tabatabai and each of Messrs. Barentzen and Wines shall confirm in writing receipt of payment from Mr. Pauls.

    2.    DENY WITHOUT PREJUDICE Mr. Pauls' renewed Motion for Advancement of Legal Fees and Expenses for this Arbitration dated December 28, 2015. Following conclusion of or simultaneous with the final hearing in this matter (as determined by the Arbitrator), Mr. Pauls' shall have the right to request recovery of his legal fees and costs incurred in this Arbitration (as shall each of Mr. Tabatabai, Fernbank Partners LLC and Fernbank LLC).

                                                      DATE: January 15, 2016

Arbitrator

{37181902;1}

# EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION
Commercial Arbitration Tribunal

---

FERNBANK LLC,
FERNBANK PARTNERS LLC,
ALEX TABATABAI,

      Claimants,

        v.                    Case No.: 01-14-0001-7921

MATTHEW PAULS,

      Respondent.

---

### FINAL AWARD

**I, THE UNDERSIGNED ARBITRATOR,** having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated May 13, 2012, and been having duly sworn, and having duly heard the proofs and allegations of the parties, does hereby, **FINALLY AWARD** as follows:

#### Introduction

The Arbitrator has previously determined that he has jurisdiction over each of the above-named Claimants and Respondent and the pending claims, counterclaims, cross-cross claims and defenses asserted by each of the parties pursuant to the respective pleadings in this matter. Evidentiary hearings in this matter were held on each of July 1, 2015, August 5, 2016 and November 15-17, 2016. Pursuant to the July 1, 2015 hearing, the Arbitrator issued a Partial Award dated July 9, 2015 (the "Partial Award") a copy of which is attached hereto as Exhibit A. On January 15, 2016, the Arbitrator made a determination of legal fees and expenses to be paid by Mr. Tabatabai to Mr. Pauls for the benefit of Mr. Paul's attorneys in the amount of $271,875.00, a copy of which is attached hereto as Exhibit B. Following the hearing on August 5, 2016, the Arbitrator determined (a) the invalidity of certain evidence provided by Mr. Tabatabai to this arbitration and (b) responsibility for unauthorized disclosure of confidential information of this arbitration, a copy of which is attached hereto as Exhibit C. The Partial Award (Exhibit A), the other determinations set forth in Exhibits B and C, as well as all other determinations and dispositions made during the course of this arbitration by the Arbitrator shall be referred to as the "Prior Determinations." The Arbitrator hereby affirms and incorporates all Prior Determinations in this Final Award.

The investment advisory business is exciting and full of opportunity for investors and investment managers alike. Yet, managing third party capital is serious business and carries with it both compliance obligations and fiduciary duties.

Mr. Tabatabai and Mr. Pauls brought certain talents to the investment advisory business they created in 2010 and had a unique opportunity to build wealth for the investors in Fernbank LLC (the "Fund") and for themselves through Fernbank Partners LLC ("Partners"), the investment manager to the Fund that Mr. Tabatabai and Mr. Pauls jointly owned and managed. Mr. Tabatabai and Mr. Pauls were successful in growing their nascent fund management business from a "friends and family" model to one including third party and institutional investors. And Mr. Pauls appears to have a knack for identifying investment opportunities and undervalued assets. Yet, although initially friends and colleagues, Mr. Tabatabai and Mr. Pauls destroyed the unique business they were building to the detriment of Fund investors and, ultimately, to themselves.

Jurisdiction

The Arbitrator's jurisdiction over the claims and parties is contained in Section 11 of the Partners' LLC Agreement as follows:

> "Any controversy, claim or dispute arising out of or relating to this Agreement, shall be settled by binding arbitration in Arlington, VA. Such arbitration shall be conducted in accordance with the then prevailing commercial arbitration rules of the American Arbitration Association ("AAA"), with the following exceptions if in conflict: (a) one arbitrator shall be chosen by AAA (the "Arbitrator"; (b) each party to the arbitration will pay its pro rata share of the expenses and fees of the arbitrator, together with other expenses of the arbitration incurred or approved by the Arbitrator; and (c) arbitration may proceed in the absence of any party if written notice (pursuant to the Arbitrator's rules and regulations) of the proceedings has been given to such party. The parties agree to abide by all decisions and awards rendered in such proceedings. Such decisions and awards rendered by the arbitrator shall be final and conclusive and may be entered in any court having jurisdiction thereof as a basis of judgment and of the issuance of execution for its collection. All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity, provided however, that nothing in this subsection shall be construed a precluding brin[g]ing an action for injunctive relief or other equitable relief. The Arbitrator shall not have the right to award punitive damages or speculative damages to either party and shall not have the power to amend this Agreement."

Each of Mr. Tabatabai and Mr. Pauls executed the Partners' LLC Agreement. None of the parties have objected to the Fund as a party to this arbitration, and the Fund joined in this arbitration as a Claimant and participated in the hearings on July 1, 2015, August 5, 2016 and November 15-17, 2016.

## Governing Law

The Partners' LLC Agreement provides in Section 12.2 that

> "This Agreement and the obligations of the Members hereunder shall be construed and enforced in accordance with the laws of the State of Delaware, excluding any conflicts of law rule or principle which might refer such construction to the laws of another state or country."

Each of Partners and the Fund are Delaware limited liability companies.

## Key Findings

Based on the evidentiary record in this arbitration, the Arbitrator hereby finds as follows:

1. Mr. Tabatabai, directly and through Partners, (i) acted grossly negligent and in bad faith and (ii) breached the fiduciary duties of loyalty, good faith and care to Partners and to the Fund and to this arbitration as follows:

    a. By failing to maintain accurate books and records for each of Partners and the Fund;

    b. By preparing tax returns for the Fund and Partners that contained material misstatements and significant errors;

    c. By failing to properly document expenses and withdrawals;

    d. By failing to supervise Mr. Pauls and Partners;

    e. By removing funds from Partners without proper authority of Partners;

    f. By taking unauthorized advances of management fees;

    g. By opening and maintaining an undisclosed bank account in Partners' name;

    h. By failing to properly document deposits into Fund and Partners bank accounts;

    i. By improperly dismissing Mr. Pauls as manager of Partners in violation of Partners' LLC Operating Agreement;

    j. By failing to respond to discovery requests from Mr. Pauls' counsel;

    k. By thwarting orders of the Arbitrator on repeated occasions;

    l. By repeatedly breaching the confidentiality of the arbitration; and

m. By submitting documents in this arbitration that proved inauthentic and to which Mr. Pauls' signature had been imposed without Mr. Pauls' knowledge or authority.

2. Mr. Pauls, directly and through Partners, (i) acted grossly negligent and (ii) breached the fiduciary duties of loyalty, good faith and care to Partners and to the Fund as follows:

   a. By failing to maintain accurate books and records for each of Partners and the Fund;

   b. By preparing financial records for the Fund and Partners that were only understandable by Mr. Pauls and not prepared in accordance with industry standards, such that if something were to happen to Mr. Pauls, a third party would be unable to understand them;

   c. By preparing tax returns for the Fund and Partners that contained material misstatements and significant errors;

   d. By failing to properly document expenses and withdrawals;

   e. By failing to supervise Mr. Tabatabai and Partners;

   f. By removing funds from Partners without property authority of Partners;

   g. By failing to provide a contingency plan or redundancy regarding the books and records and operations of the Fund and Partners;

   h. By taking unauthorized advances of management fees; and

   i. By failing to properly document deposits into Fund and Partners bank accounts.

3. Given that Mr. Tabatabai and Mr. Pauls were the sole owners and managers of Partners and controlled Partners during all times relevant to the claims, counter-claims, cross-claims and defenses in this arbitration, the above breaches of duties set forth in Key Findings Sections 1 and 2 above are imputed to Partners vis-à-vis its management of the Fund.

## AWARD

Based on the above findings, the Partners' LLC Agreement, the Fund LLC Agreement and testimony at the hearings on July 1, 2015, August 5, 2016 and November 15-17, 2016, the Arbitrator hereby finally awards as follows:

A. The Prior Determinations are hereby affirmed and made a part of this Final Award. Regarding the Arbitrator's determination as to legal fees and expenses

set forth in his Determination dated January 15, 2016 (Exhibit B), the $271,975.00 plus six percent (6%) annual interest thereon accruing from February 15, 2016 until paid shall be paid by Mr. Tabatabai to Mr. Pauls no later than thirty (30) days from the date of this Final Award. Mr. Pauls shall then have five (5) business days to pay (i) to Mr. Barentzen the amount of $130,850.00 plus six percent (6%) annual interest thereon and (ii) to Mr. Wines the amount of $141,125.00 plus six percent (6%) annual interest thereon;

B.      Neither Mr. Tabatabai nor Mr. Pauls is entitled to indemnification by Partners or the Fund;

C.      The Liquidating Trustee, the Honorable Vincent Poppiti, shall proceed with the expeditious liquidation of Partners and the Fund while endeavoring to maximize value to the Fund's investors in accordance with Delaware law;

D.      Any and all amounts in Partners' bank accounts and / or that are payable to Partners as management and other incentive fees shall be forfeited and / or paid to the Fund and such amounts shall, thereafter, be considered Fund assets and be subject to distribution pursuant to the liquidation of the Fund;

E.      Any and all incentive allocation amounts paid by the Fund and / or Partners to Mr. Tabatabai on or after October 16, 2014 including, but not limited to, incentive allocation amounts received by Mr. Tabatabai pursuant to the December 2014 and January 2015 in-kind distributions, shall be forfeited by Mr. Tabatabai and shall be paid to the Fund within thirty (30) days of the date of this Final Award. Such amounts shall become distributable assets of the Fund pursuant to the Fund's liquidation;

F.      Any and all incentive allocations payable to Mr. Pauls by Partners and / or the Fund on or after October 16, 2014 shall be forfeited by Mr. Pauls and shall become distributable assets of the Fund pursuant to the Fund's liquidation;

G.      One Hundred Percent (100%) of the costs and fees of this arbitration, including American Arbitration Association filing fees in the amount of $20,300.00, arbitrator fees in the amount of $147,856.50 and court reporter fees shall be borne by Mr. Tabatabai. Mr. Tabatabai shall reimburse Partners and / or the Fund and / or Mr. Pauls for any such costs and fees paid by them within thirty (30) days of the date of this Final Award, upon demonstration by Partners that these incurred costs have been paid.

H.      Any and all amounts ordered to be paid under this Final Award shall accrue interest until paid at the annual rate of six and one quarter percent (6.25%).

All other requests for relief by the parties are hereby denied.

It is so **FINALLY AWARDED** this 28th day of January, 2017.

_____
Michael P. Kelley, Arbitrator


District of Columbia

        SS:

City of Washington

I, Michael P. Kelley, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

_____        _____
Date                                                      Michael P. Kelley, Arbitrator

District of Columbia

Subscribed and sworn to before me, in my presence,
this 28ᵗʰ day of January, 2017.

_Terisa Hodge Greene_
Notary Public, D.C.
My commission expires 4/30/2019

**Terisa Hodge-Greene**
**Notary Public, District of Columbia**
**My Commission Expires 4/30/2019**